UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MICHAEL TRACY WALKER,

               Plaintiff,

         - against -

POLICE OFFICER TAIMUR RAJA, POLICE
OFFICER DAVID VAZQUEZ, POLICE
OFFICER ESTHARLIN LOPEZ, POLICE
OFFICER KYLE BROWN, POLICE
OFFICER WILLIAM CHOW, POLICE
OFFICER ELISA BATTISTA, SERGEANT
SAZEDUR RAHMAN, and the CITY OF
NEW YORK,

              Defendants.
-------------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-5202 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Michael Tracy Walker brings this *pro se* action against Defendants Police Officer Taimur Raja, Police Officer David Vazquez, Police Officer Estharlin Lopez, Police Officer Kyle Brown, Police Officer William Chow, Police Officer Elisa Battista, Sergeant Sazedur Rahman, and the City of New York, advancing multiple claims under 42 U.S.C. § 1983 and related claims under New York law, in connection with Plaintiff's January 2017 apprehension and arrest. Currently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, Plaintiff's motion for summary judgment is denied in its entirety, and Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

### I.    Facts

On January 8, 2017, Plaintiff entered Kangan Jewelers, located at 1058 Coney Avenue, Brooklyn, New York, at the corner of Foster Avenue and Avenue H. (Defendants' Rule 56.1

Statement[1] of Material Facts ("Defs.' 56.1"), Dkt. 112, ¶ 1.) Plaintiff was carrying a firearm and intended to steal jewelry from the store at gunpoint. (*Id.*; *see also* Deposition of Michael Tracy Walker ("Dep. Walker"), Dkt. 114-1, at 43:5–17, 44:16–24.) After entering the store, Plaintiff took jewelry while threatening the store owner, Mr. Iqbal, and the store employee, Ms. Parveen, with the gun. (Defs.' 56.1, Dkt. 112, ¶ 2.) In an attempt to restrain Plaintiff, Mr. Iqbal grabbed Plaintiff's upper body. (*Id.* ¶ 3.) Plaintiff then used his firearm to strike Mr. Iqbal in the head. (*Id.* ¶ 4.) Plaintiff fled the store by kicking and slamming his body against the locked glass door, causing it to shatter onto his body. (*Id.* ¶¶ 6–7.) Plaintiff exited the store with the jewelry and his firearm (*id.* ¶ 8), but Mr. Iqbal followed Plaintiff and wrestled him to the ground on the sidewalk outside (*id.* ¶ 9). Plaintiff and Mr. Iqbal struggled and exchanged blows until several civilian bystanders intervened, grabbed Plaintiff, hit him, and positioned him face-down on the pavement, as he resisted their efforts to restrain him. (*Id.* ¶¶ 10–12; Dep. Walker, Dkt. 114-1, at 62:1–25.)

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012).

Although Plaintiff did not file a Rule 56.1 Counterstatement, as required by the local rules, in light of Plaintiff's *pro se* status, the Court overlooks this failure and examines the underlying factual exhibits submitted by the parties. *See Onitiri v. Security*, No. 12-CV-5425 (PKC), 2015 WL 13019584, at *1 (E.D.N.Y. Feb. 5, 2015) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).

In the meantime, Ms. Parveen and other civilians had called 911 to report both the robbery and Mr. Iqbal's injuries. (Defs.' 56.1, Dkt. 112, ¶¶ 5, 16.) At about 8:26 p.m., several police officers from the New York City Police Department ("NYPD") arrived at the scene. (*Id.* ¶ 17.) NYPD officers, including Defendants Vazquez and Raja, held Plaintiff down and attempted to pull his hands behind his back in order to handcuff him. (*Id.* ¶¶ 18–20.) In an effort to subdue Plaintiff, an officer struck Plaintiff several times. (*Id.* ¶¶ 19–20.) Plaintiff testified that the first officer to approach him was a female officer[2] with a "ponytail [o]n the back of her head," who "began repeatedly punching" him in the face. (Dep. Walker, Dkt. 114-1, at 65:18–20, 66:19–22, 67:2–4.) According to Plaintiff, "multiple people [were] striking [him] at one time." (*Id.* at 69:5–7.)

Plaintiff was taken to the 70th Precinct and ultimately charged with, *inter alia*, Robbery, Assault, Grand Larceny, Criminal Possession of a Weapon, and Criminal Possession of Stolen Property. (Defs.' 56.1, Dkt. 112, ¶¶ 24, 26.) Plaintiff subsequently pled guilty to the charge of Attempted Robbery in the Second Degree[3] and was sentenced to a term of 12 years to life, as a "Persistent Violent Felony Offender," along with a 20-year order of protection to refrain from contact with Mr. Iqbal and Ms. Parveen. (*Id.* ¶¶ 28–29.)

Prior to January 8, 2017, Plaintiff had been diagnosed with advanced glaucoma and distorted vision. (*Id.* ¶ 15; Dep. Walker, Dkt. 114-1, at 89:20–90:19.) On the night of the robbery, after his altercation with Mr. Iqbal and the group of civilians, Plaintiff's vision became more blurred. (Defs.' 56.1, Dkt. 112, ¶ 13.) Sometime after January 8, 2017, Plaintiff's vision became totally impaired. (*Id.* ¶ 14.)

---

[2] While Defendants do not provide evidence that Defendant Battista is female, they do not dispute that "Defendants Rahman, Raja, Vazquez, Lopez, Brown, and Chow are not female." (*Id.* ¶ 22.)

[3] *See* N.Y. Penal Law § 160.10(2)(a).

On or about May 12, 2017, Plaintiff filed a Notice of Claim with the New York State Office of the Comptroller concerning state law claims arising from his January 2017 arrest. (*Id.* ¶ 30.) The Comptroller's Office informed Plaintiff on or about May 24, 2017 that his claim was disallowed as untimely because it was not filed within 90 days from the date of his January 8, 2017 arrest. (*Id.* ¶ 31.)

## II. Procedural History

Plaintiff commenced this action on or about August 22, 2017 in the Southern District of New York. (Dkt. 1.) Plaintiff's initial complaint alleged, *inter alia*, claims of excessive force under § 1983 and related state law claims against Defendants Raja, Vazquez, Lopez, Brown, and the City of New York. (Complaint, Dkt. 2.) On September 5, 2017, the case was transferred to the Eastern District of New York. (Dkt. 5.) The case was stayed by Order dated November 6, 2017, pending resolution of the Civilian Complaint Review Board's ("CCRB") investigation into the underlying incident. (Dkt. 21.) Plaintiff amended his initial complaint on November 13, 2017 to include claims of deprivation of federal civil rights, municipal liability, and failure to intervene. (Amended Complaint, Dkt. 22.) On August 7, 2018, the stay was lifted (Dkt. 51), and, as discovery progressed, Plaintiff submitted a "proposed amended complaint" on October 31, 2018, adding Sergeant Rahman and Police Officers Chow and Battista as Defendants (Dkts. 61, 62). Plaintiff re-filed his proposed amended complaint as an amended complaint—effectively his Second Amended Complaint—on November 26, 2018. (Second Amended Complaint ("SAC"), Dkt. 66.) Plaintiff was deposed on December 3, 2018. (Dep. Walker, Dkt. 114-1.)

On January 3, 2019, Plaintiff filed his motion for summary judgment. (Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), Dkt. 73.) By Order dated January 4, 2019, the Court construed his motion as a request for a pre-motion conference. Defendants, in turn, requested a

pre-motion conference for their anticipated summary judgment motion on February 1, 2019. (Dkt. 83.) A pre-motion conference was held on March 6, 2019, at which the Court set a briefing schedule for both parties' proposed motions for summary judgment, which were fully briefed on July 8, 2019. (Dkts. 73, 110, 117.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation and emphasis omitted).

When assessing whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. "The same standard of review applies when the court is faced with [a] cross-motion[] for summary judgment." *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (internal quotation omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

In considering a dispositive motion brought or defended by a *pro se* litigant, the Court must "liberally construe" the *pro se* party's pleadings in his favor and hold him to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (internal quotation and ellipsis omitted); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("[The Second Circuit] liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation and citations omitted)). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation and citation omitted).

# DISCUSSION

Both parties move for summary judgment on the following claims[4]: (1) excessive force (as to Defendants Raja, Vazquez, Lopez, Brown, Chow, and Battista[5]); (2) failure to intervene (as to all individual Defendants); (3) denial of the right to a fair trial (as to Defendants Raja and Vazquez); (4) failure to supervise (as to Defendant Rahman); (5) violation of due process and equal protection (as to all individual Defendants); (6) qualified immunity (as to all individual Defendants); (7) municipal liability (as to the City of New York); and (8) state law claims (as to all individual Defendants).[6] (*See* Pl.'s Mot., Dkt. 73, at 5–12; Defs.' Mot., Dkt. 113, at 9–33.)

---

[4] Because of Plaintiff's *pro se* status, the Court allowed Plaintiff's right to fair trial claim, alleged for the first time in Plaintiff's motion for summary judgment (Dkt. 73), to be added, in effect, to his Second Amended Complaint. (*See* Minute Entry March 6, 2019.)

[5] Plaintiff's Second Amended Complaint did not explicitly allege excessive force as to Defendant Battista, which Plaintiff explained was because he had not yet viewed the video of the underlying incident. (SAC, Dkt. 66, ¶¶ 5, 13.) However, because Plaintiff's Second Amended Complaint alleged that Battista "was present during plaintiff['s] assault and arrest" (*id.*), and because Plaintiff now asserts his excessive force claim as to Defendant Battista in his motion for summary judgment (Pl.'s Mot., Dkt. 73, ¶ 7), the Court allows this claim to proceed as to Defendant Battista.

[6] In both his Second Set of Supporting Facts (Dkt. 96) and his opposition to Defendants' motion for summary judgment (Dkt. 102), as well as unfinished or duplicate copies thereof (Dkts. 101, 106), Plaintiff raises, for the first time, allegations that (1) Defendants "doctored" the video evidence showing his January 8, 2017 apprehension and arrest; (2) Defendants and various non-parties to the case engaged in spoliation of evidence and *Brady* violations; (3) Plaintiff's public defender provided ineffective assistance of counsel in his state criminal case; and (4) the Court prejudiced Plaintiff by granting Defendants a stay in this case for nine months during the CCRB review. (Plaintiff's Brief in Opposition of the Defendants Motion ("Pl.'s Opp."), Dkt. 102, ¶¶ 2, 7–10, 13–16.) Except as previously noted, the Court exercises its discretion not to consider allegations newly made in Plaintiff's various reply submissions. *See DeFilippo v. N. Y. State Unified Court Sys.*, 223 F. App'x 45, 46 (2d Cir. 2007) (summary order) (holding that *pro se* plaintiff could not raise a due process claim for the first time in his opposition to defendants' summary judgment motion); *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.").

## I.    Excessive Force

"When the parties disagree as to the existence of a genuine dispute of a material fact, the Court may consult incontrovertible video evidence to determine whether summary judgment is nevertheless appropriate." *Wiles v. City of New York*, No. 13-CV-2898 (TPG), 2016 WL 6238609, at *3 (S.D.N.Y. Oct. 25, 2016) (citing *Scott v. Harris*, 550 U.S. 372, 379–80 (2007)). Here, Defendants have supplied video footage (the "Video") of Plaintiff's January 8, 2017 apprehension and arrest, recorded by a surveillance camera located outside Kangan Jewelers. (Defendants' Exhibit B ("Video"), Dkt. 114-2.) The Video shows that, shortly after civilians had subdued Plaintiff, six police officers arrived at the scene and took control of Plaintiff "by holding him down and attempting to pull his hands behind his back." (Defs.' 56.1, Dkt. 112, ¶ 18; Video, Dkt. 114-2, at 20:21:27–24:14.) One of these officers seems to match Plaintiff's description of a female officer wearing her hair in a ponytail. (Dep. Walker, Dkt. 114-1, 66:10–67:4; Video, Dkt. 114-2, at 20:21:27–30.) The Video also shows one police officer, who appears to be male, repeatedly administering blows to Plaintiff, although it is not clear which part of Plaintiff's body is being struck. (Video, Dkt. 114-2, at 20:21:48–22:03.) Plaintiff has testified that "there were multiple

---

Even allowing brief consideration of these claims in light of Plaintiff's *pro se* status, the Court finds that they are not cognizable. First, Plaintiff offers no record evidence to suggest that the video evidence was doctored. Second, Plaintiff's claims against non-parties to this case (*e.g.*, the Court, his public defender, Assistant District Attorney Michael Jaffe, the CCRB), are not cognizable for their failure to meet fundamental pleading standards. Furthermore, Plaintiff's remaining claims for ineffective assistance of counsel and prejudice due to the earlier stay in this case are challenges to the validity and duration of his confinement, which may only be brought in this court pursuant to the federal *habeas corpus* statute, 28 U.S.C. § 2254. *See McKithen v. Brown*, 481 F.3d 89, 100–01 (2d Cir. 2007) ("'[H]abeas corpus* is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release.'" (quoting *Heck v. Humphrey*, 512 U.S. 477, 481 (1994))). Indeed, Plaintiff has asserted the same claims in a separate *habeas* petition, filed on December 18, 2018, in this district. *See Walker v. Keiser*, No. 18-CV-7227 (KAM) (LB).

people striking [me] at one time." (Dep. Walker, Dkt. 114-1, 69:5–7.) Due to the presence of other bystanders and the angle of the camera, the Video does not clearly show either the other officers' actions, including those of the female officer (who Plaintiff claims struck him), or Plaintiff's movements, if any, while he was on the pavement. (*See id.* at 20:21:20–24:13.)

## A. Personal Involvement of Defendants Raja, Vazquez, Brown, Lopez, and Chow

Defendants argue that Plaintiff cannot demonstrate the personal involvement of Officers Raja, Vazquez, Brown, Lopez, and Chow[7] in any alleged use of excessive force against him. (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' Mot."), Dkt. 113, at 9–10.) The Court disagrees, except as to Defendant Lopez.

"An individual defendant is not liable under § 1983 absent personal involvement." *Morris v. Eversley*, 282 F. Supp. 2d 196, 202 (S.D.N.Y. 2003) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). Consequently, officers who are liable under a theory of direct participation in the use of excessive force cannot also be held liable for their failure to intervene. *See Ross v. City of New York*, No. 17-CV-3505 (PKC) (SMG), 2019 WL 4805147, at *10 (E.D.N.Y. Sept. 30, 2019); *Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y.

---

[7] Defendants do not move for summary judgment on Plaintiff's excessive force claim as to Defendant Battista on this ground. In his deposition, Plaintiff identified Defendant Battista as the officer who kneeled over and struck Plaintiff repeatedly as he was being arrested. (Dep. Walker, Dkt. 114-1, 66:17–22.) As discussed *infra*, Defendants instead argue that no jury could find that any force used by Battista, as well as the other officers, was excessive, and that, in any event, all Defendants are entitled to qualified immunity.

2013); *Chepilko v. City of New York*, No. 06-CV-5491 (ARR) (LB), 2012 WL 398700, at *8 n.5 (E.D.N.Y. Feb. 6, 2012). However, where a group of officers is involved in an alleged use of excessive force, "a plaintiff need not establish which officer . . . directly participated in the attack and which officer failed to intervene." *Serrata v. Givens*, No. 18-CV-2016 (ARR), 2019 WL 1597297, at *6 (E.D.N.Y. Apr. 2019) (quoting *Vesterhalt*, 667 F. Supp. 2d at 297).

A police officer "who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 if the officer was present at the assault, and fails to intervene to prevent the harm when the officer had a reasonable opportunity to do so." *Raffaele v. City of New York*, 242 F. Supp. 3d 152, 156 (E.D.N.Y. 2017). Liability for failure to intervene under § 1983 may attach "only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)); *see also Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) ("Whether [an] officer ha[s] a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994))).

Here, the Court finds that, except as to Defendant Lopez, there remain factual disputes regarding what each of the Defendant Officers did during the struggle with Plaintiff and the degree of force each officer used. Owing to the fact that Plaintiff is incarcerated and proceeding *pro se*, a paucity of evidence has been generated in discovery; indeed, it appears that the only party deposed in this matter was Plaintiff. However, in their 56.1 Statement, Defendants admit that "several officers from the [NYPD] responded to the scene," including "Defendant[] Officers David

Vasquez [sic] and Taimur Raja, as well as additional officers." (Defs.' 56.1, Dkt. 112, ¶¶ 17–18.) And while Defendants do not specifically state that Officers Lopez, Brown, and Chow were also at the scene, they do not dispute this assertion. In the absence of evidence that Officers Lopez, Brown, and Chow were not present—evidence that the Court presumes Defendants have access to and would have produced if it existed—the Court finds that the presence of these officers is, at a minimum, disputed.[8]

The video of the arrest shows a group of six officers participating in the struggle to restrain and handcuff Plaintiff. (Video, Dkt. 114-2, at 20:21:28–20:24:14.) It also shows one officer striking Plaintiff repeatedly somewhere on his body during the arrest. (*Id*. at 20:21:48–20:22:03.) In fact, Defendants acknowledge that "an officer struck plaintiff in order to gain compliance to put on the handcuffs," but do not identify the officer. (Defs.' 56.1, Dkt. 112, ¶ 20.) Plaintiff, however, in his deposition, identified the officer seen striking him in the Video as Defendant Battista.[9] (Dep. Walker, Dkt. 114-1, at 66:17–22.) The precise actions of the other officers, who are seen surrounding and on top Plaintiff, are largely obscured by the camera angle, the presence of bystanders, and the crowded nature of the situation itself due to at least six officers physically assisting in Plaintiff's arrest. (Video, Dkt. 114-2, at 20:21:20–20:25:00.)

Although Plaintiff asserts in his reply that Defendant Vazquez struck Plaintiff with open palms, Defendant Raja repeatedly punched Plaintiff's head, and Defendants Brown and Lopez also

---

[8] Notably, Defendants have not proffered any affidavits, as part of their summary judgment briefing, attesting to whether they were at the scene or not, and what actions, if any, they took in restraining and/or arresting Plaintiff.

[9] Although there may be an inconsistency between Plaintiff's identification of Battista, a female officer, as the seemingly male officer seen striking Plaintiff in the Video, those discrepancies are factual disputes for the jury to resolve. Similarly, to the extent that Plaintiff's deposition statement contradicts the allegations in his pleadings, it is for the jury to determine the credibility of those statements.

beat him (*see* Pl.'s Opp., Dkt. 102, ¶¶ 12, 16), these assertions are not evidence. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." (internal quotation omitted)); *Blount v. Swiderski*, No. 03-CV-23 (ENV) (ETB), 2006 WL 3314635, at *18 (E.D.N.Y. Nov. 14, 2006) (rejecting notion "that a plaintiff may overcome a summary judgment motion based simply on general and conclusory allegations"). Rather, at his deposition, Plaintiff testified that during the struggle with the officers, "the side of [his] face was on the [street] pavement," making it difficult for him to identify specific officers. (Dep. Walker, Dkt. 114-1, 65:1–2.) Plaintiff similarly testified that there were "repeated blows being administered by everyone over there," such that he did not know "who actually was joining [in] this [action]." (*Id.* at 68:11–16.)

Thus, the evidence produced during discovery leaves in dispute the following issues of material fact: (1) which Defendants were present at the scene of the arrest; (2) which Defendants participated in restraining and arresting Plaintiff while he was on the ground; (3) what force, if any, those Defendants used against Plaintiff; and (4) whether any Defendant saw another officer use excessive force against Plaintiff. Because genuine issues of material fact exist as to each officer's presence at the scene, as well as their conduct and observations with respect to the alleged use of excessive force, Defendants are not entitled to summary judgment on the ground that Plaintiff will not be able to establish at trial each Defendant's personal involvement in the alleged use of excessive force, either as a direct participant or by failing to intervene. *See Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 473 (E.D.N.Y. 2016) ("Even if [the officer] did not personally push or punch [plaintiff], he was undoubtedly present and in close proximity during the alleged assault. As such, there is a question of fact at least as to whether [the officer] had a reasonable opportunity to intercede on [plaintiff's] behalf.").

With respect to failure to intervene, Defendants argue that, even if Plaintiff did suffer a constitutional violation, Plaintiff fails to provide evidence showing that the officers had a realistic opportunity to intervene because the striking officer acted "quickly, in such a way that no officer would have been reasonably expected or capable of interceding." (Defs.' Mot., Dkt. 113, at 20.) Defendants rely on case law discussing brief uses of force. *See O'Neill*, 839 F.2d at 11 (finding evidence insufficient to show that three rapid punches were of sufficient duration to support liability on a theory of failure to intervene); *Johnson v. City of New York*, No. 05-CV-7519 (PKC), 2008 WL 4450270, at *6 (S.D.N.Y. Sept. 29, 2008) (finding that force lasting only "a couple of seconds" did not afford officers sufficient time to intervene). However, the Second Circuit has more recently resisted the adoption of a "hard-and-fast temporal cutoff" for resolving failure to intervene claims based on the duration of the use of excessive force. *See Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016) ("[C]ourts must evaluate each case on its own facts, keeping in mind that circumstances other than an assault's duration might bear significantly on an officer's ability to stop it from happening."). Furthermore, the Video shows that the visible blows to Plaintiff did not occur in a consistent stream and that, rather, one officer briefly attempted to restrain the officer who visibly strikes Plaintiff (Video, Dkt. 114-2, at 20:21:51–55), after which the striking officer returns to administering the blows (*id.* at 20:21:56–22:03). Given this evidence, a reasonable trier of fact could certainly conclude that there was enough time in the series of five apparent punches for the same or another officer to intervene. And the Video's obscured view also does not preclude the possibility that additional blows were inflicted on Plaintiff, as to which there was a reasonable opportunity for a Defendant to have intervened.

Thus, insofar as the Video provides only a limited view of the officers' actions on January 8, 2017, and because Defendants neither identify the officer who visibly struck Plaintiff nor dispute

that Officers Raja, Vazquez, Brown, and Chow were present for at least some portion of the events at issue, the Court denies summary judgment as to these Defendants for lack of personal involvement. The one exception to this ruling is Defendant Lopez. Plaintiff has submitted Lopez's CCRB interview—sworn testimony[10] in which Lopez states that Plaintiff was already standing and in handcuffs when Lopez arrived at the scene.[11] (*See* Plaintiff's Exhibit A, Dkt 104, at ECF[12] 8.) In light of what the Court interprets as Plaintiff's acceptance of Lopez's statement that Lopez was not present when the other officers subdued and handcuffed Plaintiff, no reasonable jury could find that Lopez either was personally involved in the alleged use of excessive force. Therefore, Plaintiff's excessive force claim is dismissed with respect to Defendant Lopez.

## B.  Reasonableness of Force Used

Claims of pre-arrest excessive force are analyzed under the Fourth Amendment "reasonableness" standard. *Szabo v. Parascandolo*, No. 16-CV-3683 (PKC) (LB), 2019 WL 481925, at *5 (E.D.N.Y. Feb. 7, 2019) (citing *Kerman v. City of New York*, 261 F.3d 229, 238–39

---

[10] Statements made to CCRB investigators are sworn. *See, e.g.*, *Lopez v. City of New York*, Nos. 15-CV-7292 (ARR) (SJB), 15-CV-7360 (ARR) (SJB), 2018 WL 2744705, at *5 (E.D.N.Y. June 7, 2018) (noting that defendant officers gave "sworn testimony to the CCRB investigators" and that plaintiffs failed to explain why "the officers' deposition testimony is likely to differ from their CCRB testimony"). As part of his opposition, Plaintiff submitted sworn statements to the CCRB by Defendants Raja, Vazquez, Lopez, and Rahman, that he had obtained for purposes of establishing the officers' actions at the scene. (*See generally* Dkt. 104.)

[11] The Court recognizes that Defendants could not offer Lopez's statement to the CCRB for its truth, but construes Plaintiff's offering of Lopez's CCRB interview, which is permissible under Federal Rule of Evidence 801(d)(2)(A), as adopting, or at least not disputing, Lopez's statement that he only arrived at the scene after Plaintiff was standing and handcuffed. *See I.M. v. United States*, 362 F. Supp. 3d 161, 174 n.9 (S.D.N.Y. 2019) ("'The principles governing admissibility of evidence do not change on a motion for summary judgment' and district courts need only consider admissible evidence in ruling on a motion for summary judgment." (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997))).

[12] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(2d Cir. 2001)). "A determination of reasonableness under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Kerman*, 261 F.3d at 239). The evaluation of a particular use of force "must be . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Kerman*, 261 F.3d at 239). In determining whether officers' actions were reasonable, courts in this Circuit consider the following: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Defendants maintain that any force used upon Plaintiff was objectively reasonable because Plaintiff had committed an armed robbery and was actively resisting apprehension and arrest when any alleged excessive force was applied. (Defs.' Mot., Dkt. 113, at 12.) Defendants also highlight instances in which uses of force were deemed reasonable under similar circumstances of apprehension or arrest. *See Husbands v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) (summary order) (affirming summary judgment dismissal of excessive force claim because "[o]ne punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force"); *Azor v. City of New York*, No. 08-CV-4473 (RJD) (LB), 2012 WL 1117256, at *4 (E.D.N.Y. Mar. 30, 2012) (granting motion to dismiss plaintiff's excessive force claim where the force used by officers during a traffic stop leading to plaintiff's arrest was "minimal and reasonable"). In assessing the reasonableness of force used, courts in the Second Circuit also consider whether the plaintiff has sustained injury. *See Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 406 (E.D.N.Y. 2011) (deeming it a "common-sense notion" to consider

"the severity of any injuries that the plaintiff has sustained"); *Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (stating that severity of injury is "probative of the amount and type of the force actually used by the arresting officers, and that in turn is likely to reflect on the reasonableness of that force"). Although "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Garcia v. Greco*, No. 05-CV-9587 (SCR) (JFK), 2010 WL 446446, at *7 (S.D.N.Y. Feb. 9, 2010) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)), a plaintiff need not show "permanent or severe" injuries in order to maintain an excessive force claim, *see Evans v. Solomon*, 681 F. Supp. 2d 233, 252 (E.D.N.Y. 2010) (quoting *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987)).

Defendants argue that any force used by the officers against Plaintiff was reasonable because Plaintiff "was refusing to be placed in handcuffs" and "was attempting to evade them." (Defs.' Mot., Dkt. 113, at 12.) The Video confirms that, before the police officers arrived, Plaintiff was resisting both Mr. Iqbal's and the civilians' efforts to apprehend him. (Video, Dkt. 114-2, at 20:20:26–21:30.) Plaintiff also acknowledged that he was "trying to defend [himself]" and "resisting" the civilians' efforts to subdue him. (Dep. Walker, Dkt. 114-1, at 62:6–14.) However, Plaintiff testified in his deposition that he could not move after the civilians had subdued him and, thus, that he was not trying to resist the officers as they sought to handcuff and arrest him. (*Id.* at 71:1–10.) In this regard, the Video shows only that Plaintiff was prostrate and, due to bystanders blocking the camera and the officers being crowded over Plaintiff, does not show whether or how actively Plaintiff was resisting the officers.

Plaintiff has also testified that he was rendered legally blind as a result of the events of January 8, 2017. (*Id.* at 83:5–84:1.) Defendants argue that Plaintiff cannot establish causation, *i.e.*, that the full extent of his visual impairment was caused by the alleged use of excessive force.

16

(Defs.' Mot., Dkt. 113, at 13.) There is no dispute that, prior to January 8, 2017, Plaintiff suffered from advanced glaucoma and distorted vision. (Defs.' 56.1, Dkt. 112, ¶ 15.) Plaintiff also admitted in his deposition that, even before the officers arrived, his vision was "more blurred" as a result of having been "badly beaten by civilians." (Dep. Walker, Dkt. 114-1, 64:7–9.) In a hospital examination on January 8, 2017 (*id.* at 73:1–23), Plaintiff's medical provider stated only that the eye damage was caused by "trauma," and Plaintiff admitted that he did not know "specifically who caused the trauma" that led to the total impairment of his vision (*id.* at 77:23–78:5). Although the evidence does not clearly establish whether the trauma that caused Plaintiff's complete visual impairment—a condition markedly worse than his pre-January 8, 2017 vision—was caused by the conduct of the officers, Plaintiff has adduced sufficient evidence from which a jury could find that force used by the individual Defendants was the trauma that exacerbated Plaintiff's eye condition that pre-existed January 8, 2017 or resulted from Plaintiff's altercation with the civilians on January 8, 2017. Summary judgment on this issue would be inappropriate. *See Frederique*, 168 F. Supp. 3d at 473 (denying summary judgment of excessive force claim where, without medical or expert evidence establishing causation, "a reasonable jury may find that the officers' actions exacerbated [plaintiff's] pre-existing injury" (citation omitted)); *Rivera v. City of Rochester*, No. 09-CV-6621 (FPG), 2015 WL 409812, at *6 (W.D.N.Y. Jan. 29, 2015) (denying motion for summary judgment where, without medical or expert evidence establishing causation, plaintiff alleged that excessive force exacerbated a prior injury).

"[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (internal citation omitted). Ultimately, the Court concludes that the Video does not resolve

material disputed issues of fact as to whether the relevant Defendants used excessive force to effectuate Plaintiff's arrest. Furthermore, Plaintiff has testified that he was not resisting the officers and that there were "repeated blows being administered by everyone over there." (Dep. Walker, Dkt. 114-1, at 68:11–16, 71:1–10.) The evidence proffered is paradigmatic of the sort of evidence "requir[ing] submission to a jury" for a final determination. *Anderson*, 477 U.S. at 251. Despite Defendants' contention that "Plaintiff undoubtedly posed an immediate threat to the safety of everyone on the scene of his arrest" (Defs.' Mot., Dkt. 113, at 12), the Video and other record evidence do not establish as a matter of law that Plaintiff posed such a threat by the time the officers arrived, and that the degree of force used by the officers was objectively reasonable. For the same reasons, Plaintiff cannot prevail on his excessive force claim as a matter of law.

Accordingly, the Court denies both parties' motions for summary judgment as to Plaintiff's excessive force claim.

## II. Failure to Intervene

Plaintiff has alleged that "six officers coupled with a sergeant in fact were present and involved in plaintiff's assault, arrest and (failure to intervene)." (SAC, Dkt. 66, ¶ 4.) Relying on the analysis of Plaintiff's excessive force claim, *supra*, the Court similarly denies both parties' motions for summary judgment as to Plaintiff's failure-to-intervene claim, with respect to the use of excessive force, against the "six officers." (*Id.*)

Plaintiff has also alleged that Sergeant Rahman was present during Plaintiff's apprehension and arrest and failed to intervene in the officers' use of excessive force. (*Id.*) Defendants do not challenge this allegation in their motion. Because the record evidence does not establish what actions, if any, Defendant Rahman took during the events of January 8, 2017, the Court also denies

both parties' motions for summary judgment as to the failure-to-intervene claim, with respect to the use of excessive force, against Defendant Rahman.

## III. Denial of Right to a Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Aguirre v. City of New York*, No. 15-CV-6043 (PKC), 2017 WL 4236552, at *10 (E.D.N.Y. Sept. 22, 2017) (additional citations omitted) (quoting *Ricciuti*, 124 F.3d at 130). To prevail on a § 1983 claim alleging violation of the right to a fair trial, a plaintiff must prove that "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citations omitted).

Plaintiff's claim that he was denied the right to a fair trial is based on his allegation that Defendants "planted" a firearm on Plaintiff at the scene of the arrest and provided related false documentation and testimony as part of the grand jury proceedings. (*See* Mar. 6, 2019 Minute Entry.) Specifically, Plaintiff maintains that Defendant Raja "fabricated testimonies during plaintiff's grand jury criminal proceedings [by] stating under oath that he recovered a weapon in close proximity (2 feet away) from plaintiff." (Pl.'s Mot., Dkt. 73, ¶ 2.) Plaintiff avers that the Video shows Defendant Vazquez "retrieving a weapon from a civilian (John Doe) in white kuffey" and placing the weapon near Plaintiff. (*Id.*)

Even assuming the truth of this contention, which the Video does not clearly corroborate, Plaintiff cannot demonstrate the causation element of this claim, "i.e., that the alleged fabrication

of evidence led to a deprivation of his liberty." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order). The evidence overwhelmingly establishes that Plaintiff robbed Kangan Jewelers at gunpoint and was continuing to hold a firearm during his physical struggle with Mr. Iqbal outside the store. (*See, e.g.*, Video, Dkt. 114-2, at 20:18:19–24.) Whether an officer at the scene recovered Plaintiff's firearm from a civilian bystander and either placed it near Plaintiff or held onto it would not have materially changed the outcome of Plaintiff's criminal proceedings at the state level.[13] As a result, there is no "genuine issue of material fact as to whether the allegedly fabricated evidence caused the prosecution to pursue charges against Plaintiff." *See Ross*, 2019 WL 4805147, at *9.

Accordingly, the Court finds that Defendants are entitled to summary judgment of Plaintiff's fair trial claim.

## IV. Failure to Supervise

Plaintiff has alleged that Defendant Sergeant Rahman failed to "supervise police officers at the scene who brutally assaulted Plaintiff" (SAC, Dkt. 66, ¶¶ 3, 14, 22) and then "allowed a civilian to plant a weapon near [P]laintiff" (*id.* ¶ 14).

"[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). Supervisor liability can be shown in one or more of the following ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of

---

[13] Furthermore, given that the Video does not clearly show the officer retrieving the gun from a civilian standing a few feet from where Plaintiff was arrested, the officer's alleged grand jury testimony "that he recovered a weapon in close proximity (2 feet away) from plaintiff" (Pl.'s Mot., Dkt. 73, ¶ 2) is not necessarily false.

subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* (internal citations omitted). "The analysis of the supervisory liability claims . . . turns on the underlying constitutional claims against the individual officer defendants." *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 269 (S.D.N.Y. 2013).

Because summary judgment is granted in Defendants' favor with respect to Plaintiff's fair trial claim, the Court similarly grants Defendants' motion for summary judgment on the supervisory liability claim with regard to Defendant Rahman's allegedly allowing a civilian to plant a weapon near Plaintiff. And because the Court has determined that Plaintiff's excessive force and related failure to intervene claims can withstand Defendants' motion for summary judgment, except as to Defendant Lopez, the Court similarly finds that Plaintiff has set forth sufficient evidence to demonstrate a genuine dispute of material fact as to whether Defendant Rahman failed to supervise the officers who participated in the alleged use of excessive force against Plaintiff. The Court therefore denies both parties' motions for summary judgment on the supervisory liability claim against Defendant Rahman with regard to the officers' alleged use of excessive force.

## V. Violations of Due Process and Equal Protection

Plaintiff has alleged constitutional claims against Defendants Vazquez and Raja, contending that (1) they violated his "due process and search and seizure rights" by "badly beating [him] in the course of arresting him," and (2) that they also violated his "equal protection of the law" by collaborating to "cheat [and] defraud [his] rights" through the fabrication of evidence during his arrest. (Pl.'s Opp., Dkt. 102, ¶ 28.) Even though Plaintiff first raised these allegations in his reply briefing, the Court considers these claims in light of the special solicitude offered to

*pro se* plaintiffs and the fact that Plaintiff alleged general violations of his Fourth and Fourteenth Amendment rights in his Second Amended Complaint.[14]   (SAC, Dkt. 66, ¶ 1.)

While "there is a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against an arrestee," *Garnett*, 838 F.3d at 278 (internal quotation omitted), Plaintiff cannot successfully establish that any of the Defendants fabricated evidence leading to a false charge against him.  As discussed *supra*, the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm.   The Court therefore grants Defendant's motion for summary judgment on Plaintiff's due process claim.

In order to prevail on his equal protection claim, Plaintiff would need to show that Defendants' conduct "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985).  However, Plaintiff fails to allege or demonstrate any facts that suggest his arrest or alleged use of excessive force against him were motivated by a discriminatory purpose or that Defendants' conduct had a discriminatory effect on Plaintiff.   The Court therefore grants summary judgment to Defendants on Plaintiff's equal protection claim.

## VI.   Qualified Immunity

Qualified immunity protects government officials from liability for civil damages "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)

---

[14] Even so, the Court construes the Fourth Amendment violation stemming from the fact that Defendants Vazquez and Raja "badly beat[]" (Pl.'s Opp., Dkt. 102, ¶ 28) Plaintiff as the claim of excessive force, discussed *supra*.  Plaintiff could not, in any event, establish a false arrest or search or seizure claim under the Fourth Amendment, given that it is undisputed that there was probable cause for his arrest, and Plaintiff does not allege that he was subjected to an improper search or seizure of evidence.

(internal quotation omitted). To determine whether qualified immunity applies, courts consider: "(1) whether a plaintiff has shown facts making out a violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct was lawful." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 561 (S.D.N.Y. 2015) (quoting *Gonzalez*, 728 F.3d at 154). "A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Beckles v. City of New York*, 492 F. App'x 181, 182 (2d Cir. 2012) (summary order) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). An officer's conduct is objectively reasonable "if officers of reasonable competence could disagree on the legality of [their] actions." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000) (internal quotation omitted).

Defendants Raja, Vazquez, Brown, Chow, Battista, and Rahman argue that they are entitled to qualified immunity. (Defs.' Mot., Dkt. 113, at 26–29.) Whether qualified immunity applies to shield these individual Defendants depends upon their reasonable belief that their actions did not violate Plaintiff's constitutional rights. This is a mixed question of law and fact. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). Thus, while "the objective reasonableness component of the inquiry as to lawfulness is not the same as the objective reasonableness component of the inquiry as to qualified immunity," *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994), *cert. denied*, 513 U.S. 1076 (1994), disputes of material fact as to the underlying events can preclude a finding of qualified immunity on a motion for summary judgment. *See Zellner*, 494 F.3d at 368 (collecting cases); *see also Frederique*, 168 F. Supp. 3d at 479 ("[S]ummary judgment on qualified immunity grounds is inappropriate where genuine issues of fact preclude a finding that an officer's actions were objectively reasonable."); *Hodge v. Village of Southampton*, 838 F.

Supp. 2d 67, 86 (E.D.N.Y. 2012) (finding that questions of material fact as to defendants' use of force precluded summary judgment on grounds of qualified immunity). Here, due to the material facts in dispute regarding Defendants' alleged use of excessive force, the Court cannot grant qualified immunity as to the individual Defendants.[15] Accordingly, the Court denies the individual Defendants' summary judgment motion with respect to their assertion of qualified immunity.

## VII.  Municipal Liability (*Monell* Claim)

Defendants move for summary judgment with respect to Plaintiff's *Monell* claim against Defendant City of New York, arguing that Plaintiff cannot prove that the alleged constitutional violations were committed pursuant to, or caused by, a NYPD policy or practice.

"A municipality may be liable under § 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). "[T]he elements of a *Monell* claim include: 1) an official policy or custom that, 2) causes the plaintiff to be subjected to, 3) a deprivation of a constitutional right." *Musso v. City of New York*, No. 05-CV-2511 (RRM) (JO), 2008 WL 3200208, at *4 (E.D.N.Y. July 24, 2008) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1987)). Because the Court has found, as discussed *supra*, that a reasonable trier of fact could find that Plaintiff's right to be free from excessive force was violated, the Court similarly finds that a jury could find the second and third elements of Plaintiff's *Monell* claim satisfied. The Court therefore addresses only the first element. To establish that an act occurred pursuant to an official

---

[15] Plaintiff alternatively argues that Defendant Officers and Sergeant acted outside of the scope of their authority as government officials, thereby forfeiting their qualified immunity. (Pl.'s Opp., Dkt. 102, ¶¶ 11–16.) The Court finds that this argument is without merit, as the officers were plainly acting within their authority as police officers to effectuate an arrest following an armed robbery.

policy or custom, a plaintiff must show "the existence of a formal policy which is officially endorsed by the municipality," or a practice that is "so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from the evidence of deliberate indifference of supervisory officials as to such abuses." *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order) (citing *Jones v. Town of East Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012)).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Krivoi v. City of New York*, No. 16-CV-5169 (NGG) (CLP), 2018 WL 5263449, at *8 (E.D.N.Y. Oct. 23, 2018) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). Here, Plaintiff's *Monell* claim alleges that the City has a widespread "custom" of "beating and killing African Americans while arresting them." (SAC, Dkt. 66, ¶ 6.) According to his Second Amended Complaint, Plaintiff introduced "video recording in establishing supporting facts of the City of New York being held liable for failing to address the wide spread beating and killings of African Americans by the hands of the (City) of New York Police." (*Id.*) However, the only video evidence in the record is of Plaintiff's apprehension and arrest. And Plaintiff offers no additional factual averments or evidence in support of his otherwise conclusory allegation that the City has adopted a widespread custom of beating and killing African Americans.

Accordingly, because Plaintiff has failed to put forth admissible evidence to support his *Monell* claim, the Court grants summary judgment dismissal of Plaintiff's *Monell* claim as to the City of New York.

## VIII.  Equitable Tolling for State Law Claims

Plaintiff argues for the first time in his reply[16] that he is entitled to equitable tolling of the statute of limitations on his state law claims against the individual Defendants for assault and battery, and failure to intervene.  (Pl.'s Opp., Dkt. 102, ¶ 22.)  Although Plaintiff raises his equitable tolling argument for the first time in his opposition, the Court briefly considers, and ultimately rejects, this argument.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Reyes v. City of New York*, 992 F. Supp. 2d 290, 300 (S.D.N.Y. 2014) (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)).  In order to maintain a state law tort claim against a New York municipality or any of its officers, agents, or employees acting within the scope of their employment, a plaintiff must have served a "notice of claim" upon the municipality within 90 days of the date of accrual of the cause(s) of action.  N.Y. Gen. Mun. L. §§ 50-e, 50-i(1)(b); *see also Przybyla v. County of Suffolk*, No. 09-CV-5129 (AYS), 2017 WL 1274051, at *2 (E.D.N.Y. Mar. 3, 2017) (discussing the notice of claim filing requirement); *Marshall v. Downey*, No. 09-CV-1764 (ARR) (LB), 2010 WL 5464270, at *7 (E.D.N.Y. Dec. 27, 2010) (same).  "Notice of claim requirements are construed 'strictly' and '[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action.'"  *Przybyla*, 2017 WL 1274051, at *2 (brackets in original) (quoting *Hardy*, 164 F.3d at 793–94).  "The purpose of the notice-of-claim

---

[16] Plaintiff's reply also invokes the continuing violation doctrine (*see* Pl.'s Opp., Dkt. 102, ¶ 22), but this doctrine does not apply to the instant action.  "[T]he continuing violation doctrine applies only to claims 'composed of a series of separate acts that collectively constitute one unlawful practice.'"  *MacFarlane v. Ewald*, No. 10-CV-2877 (JFB) (ARL), 2016 WL 4076585, at *3 (E.D.N.Y. Aug. 1, 2016) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015)).  As Plaintiff himself recognizes, his "state and federal claims emerged from a common nucleus of operative facts" (Pl.'s Opp., Dkt. 102, ¶ 22)—that is, the events of January 8, 2017.  Thus, there is no series of separate acts at issue.

requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy*, 164 F.3d at 794 (internal citations omitted).

Plaintiff mailed his Notice of Claim to the City of New York Comptroller's Office on or about May 12, 2017—more than a month after the statutorily required 90-day period, which ended on April 10, 2017. (Defs.' 56.1, Dkt. 112, ¶ 30.) On or about May 24, 2017, the Comptroller's Office informed Plaintiff that his claim was disallowed as untimely. (*Id.*; Defendants' Exhibit H, Dkt. 114-8, at 1.) Defendants argue that Plaintiff's state law claims were thus correctly time-barred. (*See* Defs.' Mot., Dkt. 113, at 29–30.)

The Second Circuit has suggested that equitable tolling of state law claims is an issue of state law. *See Sellers v. First Student, Inc.*, No. 16-CV-236 (JCH), 2016 WL 7493953, at *4 (D. Conn. Dec. 30, 2016) (citing *Hughes v. Equity Office Props. Tr.*, 245 F. App'x 88, 90 (2d Cir. 2007) (summary order)). And, under New York law, equitable tolling "is not appropriate where a plaintiff does not act with reasonable diligence." *Levermore v. De Silva*, 465 F. App'x 16, 17 (2d Cir. 2012) (summary order) (citing *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189 (N.Y. 2007)); *see also Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("Due diligence on the part of the plaintiff in bringing [an] action . . . is an essential element of equitable relief." (internal quotation omitted) (citing *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565 (N.Y. App. Div. 2005))). A plaintiff may also be entitled to equitable tolling "if that person 'is under a disability because of infancy or insanity at the time the cause of action accrues.'" *Mandarino v. Mandarino*, 408 F. App'x 428, 431 (2d Cir. 2011) (summary order) (quoting N.Y. C.P.L.R. 208). However, such tolling is restrictive, and "only [] those individuals who are unable to protect their legal rights because of an over-all inability to function in society" may avail themselves of equitable tolling

by reason of infancy or insanity. *Mandarino*, 408 F. App'x at 431 (quoting *McCarthy v. Volkswagen of Am., Inc.*, 435 N.E.2d 1072 (N.Y. 1982)); *see also Ferreira v. Maimonides Med. Ctr.*, 841 N.Y.S.2d 678, 680 (N.Y. App. Div. 2007) (same).

Plaintiff argues that he has satisfied these grounds for equitable tolling because he has "pursu[ed] his rights diligently while faced with a disability" of legal blindness and while "denied access to devices for his visual impairment within [his] correctional facility law library."[17] (Pl.'s Opp., Dkt. 102, ¶ 27.) The Court finds these arguments unavailing. First, despite his visual disability, Plaintiff has neither demonstrated the "inability to function in society" that would warrant equitable tolling of the 90-day notice-of-claim requirement, nor has he alleged any facts beyond the general allegation that he was "denied access to devices" that would suggest that he could not protect his legal rights in the three months after January 8, 2017. Furthermore, Plaintiff cannot demonstrate the due diligence that would warrant equitable tolling where he did not submit an application to file a late notice of claim under the applicable subsection. *See* N.Y. Gen. Mun. L. § 50-e(5) ("Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one of this section[.]"). Section 50-e(5) further allows for a state court to consider "all other relevant facts and circumstances," including whether the claimant was "an infant, or mentally or physically incapacitated." *Id.* Critically, the state court is "prohibited from granting an application for leave to serve a late notice of claim where that

---

[17] The Court does not consider Plaintiff's allegation that his inability to timely file his civil state law claims was due to the ineffective assistance of counsel on the part of his public defender, as she was only assigned to represent Plaintiff in his state court criminal matter. Furthermore, Plaintiff acknowledges that his public defender, in fact, verbally described to him what is shown in the Video that might constitute his state law claims. (Pl.'s Opp., Dkt. 102, ¶ 26 (noting that his public defender "narrate[d] events displayed on laptop").) Furthermore, and as discussed *supra*, the Court need not consider any claims alleged for the first time in Plaintiff's opposition briefing, nor claims that should instead be filed in a *habeas* petition.

application is made after the expiration of the one year and 90-day statute of limitations . . . ." *Dougherty v. Greene*, 76 N.Y.S.3d 648, 650 (N.Y. App. Div. 2018) (citing N.Y. Gen. Mun. L. §§ 50-e(5), 50-i(1)(c)). Thus, had Plaintiff availed himself of the late notice-of-claim application, he could have been granted an extension of time to serve his notice of claim; his failure to do so fatally undercuts his assertion of due diligence.

Accordingly, the Court denies equitable tolling for, and thereby grants summary judgment dismissal of, Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is denied in its entirety. Defendants' motion for summary judgment is granted with respect to all of Plaintiff's claims except those for excessive force and failure to intervene as to Defendants Raja, Vazquez, Brown, Chow, and Battista; and failure to intervene and failure to supervise as to Defendant Rahman. All claims against Defendant Lopez are dismissed, and he is terminated as a party in this case. Because there is no surviving claim against Defendant City of New York, it is terminated as a party in this case. The parties shall file a joint pre-trial order that complies with the Court's Individual Rules within sixty (60) days of the date of this Memorandum and Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 7, 2020
      Brooklyn, New York