UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MICHAEL WALKER,

                Plaintiff,

        - against -

TAIMUR RAJA, *Shield # 19639, et al.*,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-5202 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

Before the Court is the motion of *pro se* Plaintiff Michael Walker ("Plaintiff"), pursuant to Federal Rule of Civil Procedure ("FRCP") 59(a)[1] for a new trial on his Section 1983 excessive force claim. For the reasons below, Plaintiff's motion is denied.

## BACKGROUND

**I. Trial**

On August 25, 2022, after a three-day trial, the jury returned a verdict in favor of Defendants Elisa Battista, Kyle Brown, William Chow, Taimur Raja, and David Vazquez, all New York City Police Department ("NYPD") officers (collectively, "Defendant-Officers"), finding that the Defendant-Officers had not subjected Plaintiff to excessive force on January 8, 2017. (*See*

---

[1] During the filing period, the Court liberally construed Plaintiff's motion as being made via three separate submissions. (Dkts. 238, 243, and 244.) However, in fact, two of the three submissions, Dkts. 238 and 244, are simply excerpts from the entire motion, which was docketed as Dkt. 243. Indeed, on the mailing envelope for Dkt. 243 appear the handwritten words, "use this motion over previous submitted motion 59(e)." (Pl.'s Mot. for a New Trial ("Pl. Mot."), Dkt. 243, at ECF 20 ("ECF" refers to the pagination generated by the court's CM/ECF docketing system and not the document's internal pagination).) The Court therefore cites only to Dkt. 243 as Plaintiff's motion, and to Dkt. 246 as his reply. Furthermore, although Plaintiff references Rule 59(e) in his motion (*see* Pl. Mot., at 1), he refers to Rule 59(a) in his reply (*see* Pl.'s Reply ("Pl. Reply"), Dkt. 246, at 11). Because Rule 59(e) has no application to this matter, the Court construes Plaintiff's motion as one for a new trial under Rule 59(a).

1

Verdict Sheet, Dkt. 229.) The jury also returned a verdict in favor of Defendant Sazedur Rahman, an NYPD Lieutenant, finding that he had not failed to supervise the Defendant-Officers with respect to the alleged use of excessive force on January 8, 2017. (*Id.*)[2]

At trial, the parties introduced evidence regarding the events of January 8, 2017. On that day, shortly after 8:00 p.m., Plaintiff attempted to commit a gunpoint robbery at a jewelry store, but was thwarted when the store owner fought back, causing Plaintiff to flee the store by kicking out the store's front glass door. (*See generally* Trial Tr. ("Tr.").) Plaintiff was brought to the ground immediately outside the store by the owner and a group of nearby civilians. (Tr. 428–29.) Several minutes later, while Plaintiff was still being held down by the civilians, the Defendant-Officers arrived and piled on top of Plaintiff—with at least one officer sliding into the group because of the snowy and icy conditions that day—and after a struggle, handcuffed Plaintiff and took him into custody. (Tr. 295.) Both the civilians and police officers used physical force against Plaintiff in their efforts to subdue him and while he was on the ground. (*See, e.g.*, Tr. 49.) The botched robbery and Plaintiff's capture by the civilians and then by the Defendant-Officers were all captured on surveillance video, excerpts of which were shown at trial. (Tr. 393–94.)

Plaintiff argued to the jury that one or more of the Defendant-Officers had punched or otherwise used excessive force on him while he was on the ground, and that as a result, he became legally blind.[3] Defendant-Officers argued that none of them had punched Plaintiff or otherwise

---

[2] The Court notes that the Verdict Sheet appears to be erroneously dated "8/26/2022." (*Id.*)

[3] At trial, Plaintiff acknowledged during his testimony that before the January 8, 2017 incident, he already suffered from "advance glaucoma" that caused his vision to be blurry at times and for which he took daily medications and saw a doctor monthly. (Tr. 467–68.) He also testified in his deposition that he had suffered a "retinal separation." (*Id*. at 468–470.) Plaintiff also acknowledged during this trial testimony that he experienced "blurrier and more distorted" vision immediately after being punched in the face by the civilians on the night of January 8. (*Id*. at 467.)

used excessive force on him and that Plaintiff could not show that any deterioration in his vision after January 8, 2017 was caused by the Defendant-Officers's use of force, as opposed to the force used by the store owner or the other civilians, or the natural course of Plaintiff's pre-existing eye conditions. (Tr. 20.)

## LEGAL STANDARD

Under Rule 59(a)(1)(A) of the FRCP, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). FRCP 59(a)(1)(A) permits a party to grant a new trial [if] the verdict is against the weight of the evidence. *See Zsa Zsa Jewels, Inc. v. BMW of N. Am.*, *LLC*, No. 15-CV-6519 (KAM) (RLM), 2023 WL 3455057, at *12 (E.D.N.Y. May 15, 2023) (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012)). "[A] decision is against the weight of the evidence . . . if and only if the verdict is [(1)] seriously erroneous or [(2)] a miscarriage of justice." *Id.* (*citing Raedle*, 670 F.3d at 417–18). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 106 (2d Cir. 2002) (internal quotation marks omitted).

In contrast to the standards governing a Rule 50 motion, a court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner" when considering a Rule 59 motion. *Raedle*, 670 F.3d at 418 (2d Cir. 2012). The Court must, however, "exercise [its] ability to weigh credibility with caution and great restraint," and "'[w]here the resolution of the issues depended on assessment of the credibility of the

witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial.'" *Id*. (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).

"The decision whether to grant a new trial following a jury trial under Rule 59 is 'committed to the sound discretion of the trial judge.'" *Jackson v. Tellado*, 295 F. Supp. 3d 164, 181 (E.D.N.Y. 2018) (quoting *Stoma v. Miller Marine Servs., Inc.*, 271 F.Supp.2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia*, 983 F.2d at 363))). "Grounds for granting a new trial include verdicts that are against the weight of the evidence, *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003), substantial errors in the admission or rejection of evidence, *O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 166 (2d Cir. 2008), and non-harmless errors in jury instructions, *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011) and verdict sheets, *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005)." *Jackson*, 295 F. Supp. 3d at 181. "Because [Plaintiff] is proceeding *pro se*, the Court 'liberally construes' his moving papers 'to raise the strongest arguments they suggest.'" *Kirkland v. Cablevision Sys.*, No. 09-CV-10235 (LAP), 2020 WL 7321358, at *2 (S.D.N.Y. Dec. 11, 2020) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)).

## DISCUSSION

Plaintiff makes four arguments in support of his request for a new trial: (1) the Court erred by allowing Defendant-Officers to introduce portions of the surveillance videotape showing the attempted robbery; (2) Defendant-Officers violated Plaintiff's right to a fair trial by not identifying[4] NYPD Officer Adam Osman" as a potential witness during discovery; (3) the Court erred by not advising Plaintiff that he needed to subpoena the optician, Dr. Barry Hyman, who saw

---

[4] Plaintiff repeatedly uses the word "indemnify," which the Court construes, based on the context, to mean "identify." (*See* Pl. Mot., at 11; Pl. Reply, at 7.)

4

Plaintiff after January 8, 2017 in order to obtain his testimony at trial; and (4) the Court failed to sufficiently accommodate Plaintiff's situation as an incarcerated plaintiff with respect to his custodial housing during the trial.[5]  (Pl. Mot., at 3–16.)

I.      **Admission of Surveillance Videotape Depicting the Attempted Robbery**

Plaintiff appears to make two separate challenges—one procedural and the other substantive—with regard to the Court's decision to allow in surveillance videotape showing part of the robbery attempt by Plaintiff on the night of January 8, 2017.  First, he argues that the Court made a last-minute change in its ruling about not allowing in any portion of the robbery itself, which prejudiced Plaintiff.  (Pl. Mot., at 4, 7–8.)  Second, he argues that the admission of that portion of the video resulted in undue prejudice, especially given defense counsel's focus on that portion of the video before the jury.  (Pl. Reply, at 3–5.)

As to Plaintiff's first contention, he is simply mistaken about the record.  Plaintiff asserts that in its rulings on the motions *in limine*, the Court precluded Defendant-Officers from showing any portion of the videotape of the attempted robbery.  (Pl. Mot. at 4).  That is incorrect.  Rather, in its *in limine* rulings, the Court ruled that while "[t]he portions of the video that depict the robbery should not come in as evidence, . . . those portions of the video relevant to Defendants' alleged excessive force and Plaintiff's alleged visual impairment will be admissible."  (*See* Dkt. 144, at 2, ¶ 15 (summary chart of Court's *in limine* rulings); *see also* Tr. at 57 (the Court confirming that "during the prior motion *in limine* conference[,] . . . I said that the surveillance video that shows

---

[5] In addition to opposing each of these arguments, Defendants maintain that the Court should deny Plaintiff's motion because he failed to cite to the trial transcript.  (Defs.' Opp'n, Dkt. 245, at 3 ("As a threshold matter, the Court should deny Plaintiff's motion for a new trial because Plaintiff does not provide a single citation to the trial transcript to support any of his arguments.").)  Given Plaintiff's *pro se* status and his visual disability, the Court does not consider this argument in resolving Plaintiff's motion.

5

the robbery itself and then the civilians taking Mr. Walker down would be allowed in, and as I said during the sidebar, the reason is because it goes to the potential other causes for the loss in vision.").)  Thus, Plaintiff's procedural challenge to the admission of the videotape evidence is without merit.

Plaintiff's substantive argument, namely, that the videotape evidence depicting a portion of the attempted robbery was unduly prejudicial to him, does not warrant a new trial.  As a general matter, evidentiary rulings by the trial court rarely rise to the level of requiring a new trial because of the high bar that a new trial may be warranted only if the district court made evidentiary errors that "caused the jury to reach a seriously erroneous result or its verdict is a miscarriage of justice." *Graham v. City of New York*, 128 F. Supp. 3d 681, 704–05 (E.D.N.Y. 2015) (quoting *Stampf v. Long Island R.R. Co.*, 761 F3d 192, 203 (2d Cir. 2014)).  Here, the Court gave repeated and serious consideration to the prejudice to Plaintiff that could result from the admission of this portion of the video, but ultimately held that the probative value outweighed the prejudice, *see* Fed. R. Evid. 403, given that the circumstances and nature of the criminal conduct Plaintiff had allegedly committed—which, here, was a violent, gunpoint robbery where Plaintiff sought to escape by kicking out a glass door—were relevant to Defendant-Officers' belief about the degree of force that might be necessary.  (*See* Tr. 99–102 (colloquy with defense counsel about relevance of Plaintiff's conduct during the attempted robbery), Tr. 447–454 (Plaintiff admitting that he struck the store owner in the head and kicked out the store's glass door because he was desperate to escape), Tr. 418 (Defendant Rahman testifying, "the call we responded to [was] a very serious call.  A person who just committed a violent crime, which is a gunpoint robbery to a commercial establishment.")); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (finding that a suspect's attempts to evade arrest are relevant to the determination of whether an officer's use of

6

force was reasonable). As the Court also held in its *in limine* rulings, what occurred just before Plaintiff broke through the glass door—which included a physical struggle with the store owner, who appeared on Plaintiff's back at one point—as well as Plaintiff breaking through the glass door were relevant to Plaintiff's claim of vision loss as a result of the *Defendant-Officers's* use of force. Furthermore, as Defendant-Officers note, the video showing Plaintiff striking the store owner was very brief—approximately 2-3 seconds—while the remainder of the video showing Plaintiff being attacked and subdued by the civilians and then subdued by the police officers lasted approximately 3-1/2 minutes. (*See* Defs.' Ex. B, Dkt. 245-2, at 0:00-2:31.) In addition, Plaintiff acknowledged throughout the trial that he had "committed a crime" and that he had engaged in all of the violent acts depicted in the video, including wrestling with the owner, hitting the owner with the gun, and kicking through the store's glass door. (*See, e.g.*, Tr. 11–12, 437–441, 454.) Thus, the Court does not find its admission of videotape showing a brief portion of the attempted robbery amounted to a "substantial error" warranting a new trial, *O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d at 166, or that the admission of this evidence caused the jury to "reach[] a seriously erroneous result or that the[ir] verdict is a miscarriage of justice." *Jackson*, 295 F. Supp. 3d at 181 (internal quotation marks omitted).

## II.     Failure to Identify Officer Osman as a Potential Witness

Plaintiff argues that he was deprived of a fair trial by Defendant-Officers' failure to identify NYPD Officer Adam Osman as a potential witness during discovery. (Pl. Mot., at 10–14; Pl. Reply, at 6–9.) This argument is without merit.

Plaintiff fails to show that Officer Osman, who merely drove supervisory Defendant Lt. Rahman to the scene after Plaintiff had been handcuffed, had any relevant information relating to the use of force against Plaintiff by the Defendant-Officers. (Tr. 356–57, 362–63.) Contrary to

7

his argument (Pl. Mot., at 11–13), there is no basis for believing that Officer Osman could identify the unidentified officer seen on the videotape punching Plaintiff. Nor, as the Court noted at trial, is there any reason to believe that Officer Osman was involved in any way in the alleged excessive use of force. (Tr. 366–67.) Relatedly, Plaintiff fails to show that Defendant-Officers' purported failure to identify Osman during discovery resulted in a verdict that was against the weight of the evidence or an unfair trial. *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 240 (2d Cir. 2002). Thus, the failure to identify Officer Osman during discovery did not deprive Plaintiff of any relevant evidence or his right to a fair trial.[6]

### III. Subpoenaing Optician Who Saw Plaintiff Post-Incident

Plaintiff argues that he was deprived of a fair trial because the Court did not advise him that he need to subpoena the optician, Dr. Hyman, who had examined Plaintiff a little over a week after January 8, 2017.[7] This claim is without merit.

As an initial matter, while courts must be solicitous of *pro se* plaintiffs and must construe their pleadings and arguments liberally, the court is under no duty, and indeed should avoid, advising a plaintiff on how to pursue his or her case. *See Clare v. United States*, Nos. 12-CR-797

---

[6] Defendants argue that the Court should deny, as futile, Plaintiff's request for leave to amend his complaint to name Officer Osman as a defendant. The Court agrees. For the reasons discussed above, any such amendment would be futile. *Kirk v. Heppt*, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) ("A proposed amendment to a pleading is deemed to be futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."). Plaintiff cannot plausibly allege that Officer Osman played a role or directly participated in the alleged excessive use of force. *Al-Jundi v. Est. of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir. 1989) ("[P]ersonal involvement of defendants in [the] alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[.]")

[7] The Court notes that this claim is contradicted somewhat by Plaintiff's statement to the jury in his opening statement that, "I stand before you without representation of a lawyer which was on my own accord. The Honorable Judge has adequately provided numerous removal [sic] of access barriers in order for me to present my case to you today, and I thank the courts and Judge Chen to do that for me." (Tr. 12.)

8

(ARR), 17-CV-4484 (ARR), 2018 WL 1385881, at *4 (E.D.N.Y. Mar. 19, 2018); *Tracy*, 623 F.3d at 102.  Nonetheless, throughout the entire case, the Court took Plaintiff's *pro se* status as well as his visual disability into account to ensure that he had a fair opportunity to pursue and present his claims.  In fact, Plaintiff's sole remaining excessive force claim could have been dismissed at the summary judgment stage because he had no evidence, aside from the timing, to show a causal connection between his claimed injury of diminished vision and Defendant-Officers's allegedly excessive use of force, especially given Plaintiff's pre-existing visual impairment from glaucoma (and a retinal separation) and given Plaintiff's own testimony that his vision became blurrier after being punched by the civilians during the robbery incident.

Consistent with this approach, on June 10, 2022, the Court provided Plaintiff with a 125-page handbook, "Representing Yourself at Trial," produced by the United States District Court for the Southern District of New York.  (Dkt. 209.)  That handbook, among other things, specifically advised, "[i]n order to make sure that a non-party witness attends your trial, you should subpoena the witness as far in advance of the trial as possible," and provided an electronic link to a FRCP 45 subpoena form.  (*Id*. at 49.)  In addition, even though Plaintiff did not have an expert medical witness to testify at trial—regarding both the deterioration in Plaintiff's eyesight after January 8, 2017 and the causal link between that deterioration of the events of that night—the Court permitted him to introduce his medical records at trial.  (*See* Dkt. 144 at 2, ¶¶ 11, 12.)

Furthermore, calling Dr. Hyman at trial would have had minimal probative value and thus any error in not advising Plaintiff to subpoena him was harmless.  Although Dr. Hyman presumably could have testified about the state of Plaintiff's vision about a week after January 8, 2017, as a non-expert, he could not have opined about causation for any deterioration in Plaintiff's

9

vision and it is not clear whether he knew anything about Plaintiff's visual acuity or issues before January 8, 2017.

Thus, the fact that the Court did not advise Plaintiff that he should have subpoenaed the optician to testify at trial did not deprive Plaintiff of a fair trial and does not warrant a new one. *See Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 691 (2d Cir. 1983).

## IV. Accommodation of Plaintiff's Housing Circumstances

Lastly, Plaintiff argues that he was prejudiced by not being housed in a correctional facility near New York City during trial and having to travel 2-1/2 hours each day each way to and from court. (Pl. Mot., at 5–7.) This claim is meritless.

Throughout the pendency of this case, including during the trial, Plaintiff was in state custody at a New York State Department of Corrections and Community Supervision ("DOCCS") facility in upstate New York. Court hearings and conferences with Plaintiff were conducted telephonically throughout the case. (*See, e.g.*, 3/27/2020, 8/11/2020, 9/15/21,11/17/2021, 8/17/2022 Minute Entries.) As noted in the defense submission, in anticipation of trial, the Court and Defendants "tried extensively to arrange for Plaintiff to have a shorter commute [to the courthouse] to no avail." (Pl. Mot., at 10–11 (describing multiple writs of *habeas corpus* presented by defense and endorsed by Court as part of unsuccessful effort to relocate Plaintiff to a closer federal or state prison facility during the trial); Dkts. 213, 215, 218.)[8]

Furthermore, as the Court noted during the trial, the long commute did not necessarily prejudice him because he could simply use the time to sleep:

---

[8] Because of Plaintiff's visual impairments, the Court also secured for Plaintiff's use at trial document-reading equipment.

> Plaintiff: I'm not getting enough rest, and I have high blood pressure, and I have a lot of preexisting injuries. Is there any way that I can get somewhere closer that I can alleviate –
>
> Court: I've already explored that, Mr. Walker. It's not possible. These matters are outside of my hands because the facilities have their own rules and restrictions. And, in part, I gather, because of your medical issues, there isn't room closer, like at Rikers, so this is the best they can do, and it's all we can do to get you here. As I said on the phone -- and I'm sorry about this -- during our phone conference, *you should use time coming and going to get your rest*, and that's all I can say. I'm sorry about that, but that's the best we can do.

(Tr. 103 (emphasis added).) Furthermore, the trial lasted only four days, which further mitigated the impact of the long commute on Plaintiff's participation in the trial.

The Court therefore does not find that Plaintiff was unfairly prejudiced by the length of his commute during the trial or that this circumstance warrants a new trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial pursuant to Rule 59(a)(1)(A) is denied. The Clerk's Judgment in favor of Defendants therefore stands. (Dkt. 234.)[9] The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: September 30, 2023
Brooklyn, New York

---

[9] A Clerk's Judgment in Defendants' favor was issued on August 31, 2022. (Dkt. 234.) On September 12, 2022, the Court docketed Plaintiff's Affirmation in Request to Appeal Trial Court Judgment, dated 8/27/2022. (Dkt. 235.) But then, on September 22, 2022, the Court docketed Plaintiff's motion for a new trial, dated 9/17/2022 (Dkt. 238), which thus mooted his notice of appeal.

11